**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERRI A. COCCARELLI- YACOBOZZI,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 08-311 Erie** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

McLaughlin, Sean J., District Judge.

## I. Introduction

Terri Coccarelli-Yacobozzi, ("Plaintiff") commenced the instant action pursuant to 42 U.S.C. §405(g), seeking judicial review of the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §401, *et. seq.* and §1381, *et. seq.* Plaintiff filed an application for DIB with a protective filing date of March 23, 2004. (AR. at 67).[1] Her application was denied by the Commissioner on September 8, 2004. (AR. at 44). Plaintiff filed a timely request for an administrative hearing on October 8, 2004. (AR. at 49-50). She then protectively filed an application for SSI on July 12, 2006. (AR. at 20). Plaintiff alleged disability as a result of mixed bi-polar disorder, depression and neck and back pain, with an alleged

---

[1]     References to the administrative record (Doc. No. 6), will be designated by the citation "(AR. at ___)".

onset date of September 1, 2002.  (AR. at 44, 323).[2]

An administrative law judge ("ALJ") conducted two hearings, on September 21, 2006 and May 15, 2007. (AR. at 291-302; 303- 332).  Plaintiff appeared at both hearings, represented by counsel, and testified.  (AR. at 291-332).  Additionally, vocational experts appeared at both hearings and testified in regard to the availability of work for an individual with Plaintiff's limitations.  *Id*.

The ALJ issued a decision on August 17, 2007, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (AR. at 20-31).  The Appeals Council denied Plaintiff's request for review of the ALJ's determination on September 24, 2008, (AR. at 5-8), making the ALJ's decision the final determination of the Commissioner.  Having exhausted her administrative remedies, Plaintiff filed a timely Complaint against the Commissioner in this Court, seeking judicial review of the final determination of the Commissioner. (Doc. No. 3).  Presently pending before the Court are the parties' cross motions for summary judgment. (Docs. No.8-11).

For the following reasons, Plaintiff's Motion for Summary Judgment, (Doc. No. 8), will be denied and the Commissioner's Motion for Summary Judgment, (Doc. No. 10), will be granted.

## II.  Background

Plaintiff was born on July 27, 1959, making her forty-seven (47) years old at the time of the second administrative hearing in May 2007. (AR. at 307).  She testified that she has a high school education and additional training as a nurse's aide.  *Id*.  Her prior work experience includes experience as a certified nurse's assistant at a nursing home, (AR. at 307-308), housekeeper, (AR. at 308), a cashier at a fast-food restaurant, (AR. at 309), and a cashier at a hardware store. (AR. at

---

[2]      Plaintiff received a prior period of disability, which was terminated on September 1, 2002 as a result of Plaintiff's incarceration in a federal prison. (AR. at 20, 97, 166).

314).  At the time of the second administrative hearing, Plaintiff testified that she had been recently married and lived with her husband. (AR. at 306).

The administrative record indicates that Plaintiff was treated by numerous physicians for both physical and mental health problems as early as 2002. (AR. at 128-284).

Hamot Medical Center

The earliest records in the transcript from Hamot Medical Center indicate that Plaintiff was admitted to the hospital on January 27, 2000 after she ingested an overdose of medication in an attempted suicide. (AR. at 127).  She remained in the hospital until January 31, 2000. *Id*.  She was treated with and prescribed Celexa[3] and Depakote.[4]  She was diagnosed as having bipolar affective disorder, depressive phase, a history of cocaine, prescription analgesic and stimulant abuse, personality disorder as well as a history of chronic back pain and migraine headaches.  (AR. at 128).  At the time she was admitted to the hospital, Plaintiff was assigned a Global Assessment of Functioning ("GAF") score of 55. (AR. at 134).[5]

––––––––––––––––––––

[3]     Celexa is a selective serotonin reuptake inhibitor (SSRI) used to treat depression. www. drugs.com/celexa.html (last visited February 1, 2010).

[4]     Depakote is used to treat various types of seizure disorders and the manic phase of bipolar disorders (including manic depressive disorder).  www.drugs.com/ depakote.html. (Last visited February 1, 2010).

[5]
The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest.   The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."   American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000).  An individual with a GAF score of 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning;" of 50 may have "[s]erious symptoms (e.g., suicidal ideation . . . .)" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job);" of 40 may have "[s]ome impairment in reality testing or communication" or "major

Stairways Behavioral Health

Dr. Helen Kohn performed a psychiatric evaluation of Plaintiff on June 29, 2004. (AR. at 194).  At the time of the evaluation, Plaintiff was being treated with Celexa, Trazadone[6] and Neurontin.[7] Dr. Kohn noted a diagnosis of bipolar affective disorder and inpatient treatment for depression in January 2000. (AR. at 194).  She also noted that Plaintiff received outpatient treatment from Stairways between November 2001 and August 2003, during Plaintiff's incarceration. *Id*.  Dr. Kohn noted no history of aggressive behavior, but a history of being a victim of violence and abuse, as well we extensive drug and alcohol involvement. (AR. at 195).  Plaintiff reported to Dr. Kohn that she was unemployed at the time of the evaluation because her bi-polar symptoms and drug use interfered with her ability to work. *Id*.  She noted Plaintiff's history of DUI and drug convictions. (AR. at 196).

On examination, Dr. Kohn noted that Plaintiff was cooperative with good eye contact. *Id*. She noted no unusual mannerisms, spontaneous speech with normal rate and volume and noted that Plaintiff was normally productive. *Id*.  Plaintiff showed no loose associations, thought blocking or flight of ideas.  *Id*.  Plaintiff was not internally preoccupied. *Id*.  Plaintiff reported that she had no delusions, hallucinations, suicidal, homicidal or self-destructive impulses, but did exhibit feelings

---

impairment in several areas, such as work or school, family relations, judgment, thinking or mood; of 30 may have behavior "considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment (e.g., . . . suicidal preoccupation)" or "inability to function in almost all areas . . .;  of 20 "[s]ome danger of hurting self or others . . . or occasionally fails to maintain minimal personal hygiene . . . or gross impairment in communication."  *Id.*

[6]        Trazadone is a tetracyclic antidepressent used to treat depression, anxiety disorder and chronic pain.  www.drugs.com/trazadone.html. (Last visited February 1, 2010).

[7]        Neurontin is an anti-epileptic medication (or anticonvulsant) that treats seizures and some types of pain. www.drugs.com/neurontin.html. (Last visited February 1, 2010).

of guilt.  *Id*.  Dr. Kohn indicated that Plaintiff's self-esteem was improved since her drug rehabilitation.  She noted no short or long term memory impairment.  *Id*.  Dr. Kohn diagnosed Plaintiff as having bipolar affective disorder, polysubstance abuse in early remission. (AR. at 197). She assigned Plaintiff a GAF of 65-70.  *Id*.

Plaintiff was a walk-in at Stairways in August 2004. (AR. at 198).  The records indicate that she asked to see a nurse because she was "going too fast."  Plaintiff stated that she was having racing thoughts, but the records indicate that the nurse did not believe Plaintiff was manic or hypo manic. *Id*.  On September 22, 2004, Plaintiff called Stairways, indicating that her hands were shaking and "she felt manicky."  *Id*.  Plaintiff called again on September 15, 2004, indicating that she felt shaky and had rapid speech. Dr. Kohn changed her medication.  *Id*.   Plaintiff called on September 30, reporting mood swings.  *Id*.  She was kept on the same medication regimen.  *Id*.

Plaintiff called Stairways on March 22, 2005, complaining of poor sleep and persistent depression.  *Id*.  Her medication was not changed. Plaintiff was a no-show at regular appointments in September and October of 2005.  In October 2005, Plaintiff complained of an inability to sleep. The records note that Plaintiff had major surgery prior to this appointment on her C6-7 discs.  (AR. at 200).

Dr. Kohn completed a medical source statement on August 29, 2006. (AR. at 202-203).  Dr. Kohn opined that Plaintiff would have moderate limitations in her ability to understand, remember and carry out short, simple instructions and moderate ability to carry out detailed instructions. (AR. at 201).  She also indicated that Plaintiff would have moderate limitations in her ability to make judgments on simple work-related decisions.  *Id*.  Dr. Kohn indicated that her clinical findings of obsessions and ruminations, which interfere with Plaintiff's concentration, supported her opinions.

5

*Id.* Dr. Kohn also noted that Plaintiff's ability to respond to supervision, co-workers and work pressures would be affected by her impairments. (AR. at 203). She also indicated moderate limitations in Plaintiff's abilities to interact appropriately with the public, supervisors and co-workers and to respond appropriately to work pressures in the usual work setting. Dr. Kohn opined that, in addition to these limitations, Plaintiff's reliability and customer relations would be affected by mood swings and irritability. *Id.* Dr. Kohn noted that her opinions would likely not change, regardless of Plaintiff's complete abstinence from drugs and/or alcohol. *Id.*

<u>Dr. Paul Kohut, D.O. and Dr. Conrad Fraider, D.O.</u>

Treatment records from Dr. Paul Kohut, D.O., indicate that Plaintiff was seen on numerous occasions for neck and back pain. (AR. at 206- 220). The records from Dr. Kohut, as early as 2000, Plaintiff was seen with complaints of pain and disc herniation at C6-7. (AR. 220). In 2000, the medical records indicate that Plaintiff had degenerative disc disease at C3 through C6. (AR. at 224). Plaintiff was seen by Dr. Kohut numerous times in 2004. In 2000 and again in 2004 Plaintiff was treated for chronic pain with Lortab.[8] (AR. at 208- 215) In October 2004, Plaintiff reported increased neck and back pain. (AR. at 208). An MRI of the cervical spine showed cervical spondylosis and likely paraspinal spasm. (AR. at 221). The results also showed disc dessication with diffuse bulging at multiple levels from the C3 through C7. *Id.*

Plaintiff was seen by Dr. Conrad Fraider, D.O. multiple times in 2004 and 2005 in regard to her chronic back and neck pain. (AR. at 228). Records from Dr. Fraider indicate that Plaintiff was treated with injections of Kenalog and Xylocaine. (AR. at 245). She was also treated at various

---

[8]     Lortab (hyrdocodone) is a narcotic pain reliever, used to relieve moderate to severe pain. www.drugs.com/lortab.html. (Last visited February 1, 2010).

times with various pain medications, including Vicodin, (AR. at 245), fentanyl and Duragesic. (AR. at 235). In August 2005, Dr. Conrad opined that an anterior cervical at C6-7 would be problematic and indicated that a posterior approach at C6-7 would be the best surgical option to relieve Plaintiff's pain. (AR. at 228). The radiology records indicate that Plaintiff had multilevel cervical spondylosis, left foraminal lateral recess at C6-7 and disc herniation. (AR. at 233). Plaintiff underwent a cervical fusion at the C-7 level on September 22, 2005. (AR. at 226).

Plaintiff continued to complain of neck and back pain after the cervical fusion. (AR. at 280). She was administered a cervical epidural anesthetic and steroid on January 11, 2006, (AR. at 268), and again February 8, 2006, March 14, 2006 and September 29, 2006. (AR. at 269-271).


Dr. Robert McLain, M.D.

Plaintiff was referred to Dr. Robert McClain, M.D. in 2007. (AR. at 280- 283). Dr. McLain's treatment notes indicate that Plaintiff continued to report chronic neck pain, which increased with exercise programs and activity. (AR. at 280). He noted that epidural injections and a wide variety of medicines provided only "transient" relief at best. *Id*. On physical examination Dr. McLain noted that Plaintiff appeared depressed and tearful during the examination. *Id*. He also noted that Plaintiff appeared to be hypersensitive to light touch around the neck and back. He indicated that she had reasonable effort in extension, but had restricted rotation in her neck motion. *Id*. He noted tenderness over the paraspinous and paracervical muscles. *Id*. He noted normal grip and motor function, with some break away weakness. *Id*.

Dr. McLain indicated that smoking cessation was recommended and once achieved, he would be willing to discuss the possibility of revision surgery to repair the operated level and the possibility

of extending the disc fusion. (AR. at 282). He also noted that continued treatment with pain medications and continuing to limit her activity was the best course of pain management. *Id*. He further indicated that he believed that the risk of pseudoarthritis would be too high to warrant an attempted revision, but that he would be willing to discuss it if smoking cessation occurred. *Id*.

Dr. Julie Uran, Phd.

Plaintiff was evaluated by Dr. Julie Uran, Phd., a clinical psychologist, on July 7, 2004. (AR. at 166). Dr. Uran completed a clinical psychological disability evaluation. *Id*. She noted that Plaintiff indicated that she was unable to remain at various job positions because of her inability to work due to depression and/or drug use. (AR. at 166). She also noted a reported history of cocaine, alcohol and prescription drug abuse, starting at the age of twenty-three (23). (AR. at 167). Dr. Uran indicated that Plaintiff had numerous relapses as a result of depression and bi-polar disorder and a history of incarceration related to drug and DUI arrests. *Id*. Plaintiff reported that she had been diagnosed with bipolar disorder, depression and dissociative identity disordeAR. *Id*. She also stated that her family reported Plaintiff sometimes had an alternative personality of a small girl that she called Bit. *Id*. At the time of the evaluation, Plaintiff indicated that her last manic phase was a week prior, which included inflated self-esteem, diminished sleep and rapid thoughts and speech. *Id*. Plaintiff also reported excessive involvement in activities yielding high risk consequences, including a history of stealing. *Id*. Plaintiff reported to Dr. Uran that she had been mentally and physically abused by a former boyfriend and had been raped by a stranger at the age of nineteen (19). *Id*. Dr. Uran's notes indicate that Plaintiff experienced post-traumatic stress, including flashbacks of the rape within days of the evaluation. *Id*. Dr. Uran also noted a history of intense anger and isolation and poor sleep patterns. *Id*.

8

On examination, Dr. Uran indicated that Plaintiff's thought processes were normal and she used coherent language. (AR. at 168).   She also indicated that Plaintiff reported attentional difficulties and Plaintiff was unable to identify similarities between objects and perform serial subtractions. (AR. at 168-169).   Dr. Uran indicated that Plaintiff was fully oriented to time, place, person, day, date and year. *Id*.   She noted an adequate long-term memory, but poor immediate memory.  (AR. at 169).  Impulse control and social judgment were appropriate.  *Id*.  Dr. Uran noted limited insight and a need for regular counseling. *Id*.  She diagnosed Plaintiff as having bipolar disorder, dissociative disorder and polysubstance abuse disorder, in remission. *Id*.  She assigned Plaintiff a GAF score of 55.  She noted that Plaintiff's prognosis would be poor in terms of higher level functioning and personality integration. *Id*.

Dr. Uran indicated that Plaintiff would have slight impairment in her ability to understand, remember and carry out short, simple instructions, extreme limitations in her ability to understand, remember and carry out detailed instructions and marked limitations in her ability to make judgments on simple work-related decisions, all as a result of Plaintiff's mood and dissociative disorders. (AR. at 173).  Dr. Uran indicated marked limitations in Plaintiff's ability to interact appropriately with the public, with supervisors and with co-workers. *Id*.  She also noted extreme limitations in Plaintiff's ability to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting. *Id*.

State Agency Evaluation

The state agency evaluator completed a mental residual functional capacity assessment on August 24, 2004. (AR. at 175- 177).  The evaluator indicated that Plaintiff was not significantly limited in areas of understanding and memory and most areas of sustained concentration and

9

persistence, with the exception that he noted she was moderately limited in her ability to maintain attention and concentration for extended periods. (AR. at 175). Likewise, he indicated that Plaintiff was not significantly limited in the area of social interactions, with the exception that she was moderately limited in her ability to set realistic goals or make plans independently from others. (AR. at 176). In his summary conclusion, the state agency evaluator indicated that Plaintiff's attention wavers, but that she has worked in the past and can shop, do laundry and drive. (AR. at 177).

### III.  Standard of Review

In reviewing a determination by an ALJ, the Court must affirm the decision of the Commissioner unless it is not supported by substantial evidence.  See 42 U.S.C. §405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 564-65, 108 S.Ct. 2541 (1988) (quoting *Consolidated Edison Co.v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *see Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla.  *Richardson*, 402 U.S. at 401; *Jesurum v. Sec. of U.S. Dept. of H.H.S.*, 48 F.3d 114, 117 (3d Cir. 1995).

### IV.  Discussion

Under the Social Security Act, an individual will be considered "disabled" when she is:

> unable to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in death
> or has lasted or can be expected to last for a continuous of not less than 12 months.
> ...

42 U.S.C. §§416(i)(1)(A); 423(d)(1)(A); 20 C.F.R. 404.1505.  A person is unable to engage in

substantial gainful activity when she:

> is not only unable to do [her] previous work but cannot, consider [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work. ...

42 U.S.C. §423(d)(2)(A).

In determining whether the claimant meets the definition of disabled under the Social Security Act, the Commissioner must apply a five step evaluation process. 20 C.F.R. §404.1520. At step one of the sequential evaluation process, the Commissioner must determine whether the claimant has been engaged in any substantial gainful activity for the relevant time period. 20 C.F.R. §404.1520(a)(4)(i). If not, the evaluation process proceeds to step two, at which point the Commissioner must determine whether the claimant suffers from a "severe impairment." 42 U.S.C. §404.1520(a)(4)(ii). If so, then the Commissioner must determine whether the impairments or combination of impairments, meets or equals the criteria of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. 42 U.S.C. §404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments do not meet or equal a listed impairment, the evaluations process proceeds to step four and the Commissioner must determine whether the claimant's severe impairments prevent her from returning to past relevant work. 42 U.S.C. §404.1520(a)(4)(iv). If the Commissioner determined that the claimant cannot return to past relevant work he or she must then determine, at step five, whether the claimant can perform other work that exists in the national economy, considering the claimant's residual functional capacity, age, education and work experience. 42 U.S.C. §404.1520(a)(4)(v). *See also McCrea*, 370 F.3d at 360; *Sykes v. Apfel*, 228

11

F.3d 269, 262-63 (3d Cir. 2000).

In his determination, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2007. (AR. at 22). At step one of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 1, 2002, the alleged onset date. *Id*. At step two, the ALJ found that Plaintiff has the following severe impairments: affective disorder and a history of cervical discectomy. *Id*. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (AR. at 23). Specifically, the ALJ found that Plaintiff's impairments do not meet or equal Listings 12.04 and 1.04, pertaining to affective disorders and disorders of the spine, respectively. *Id*. The ALJ determined that Plaintiff has the residual functional capacity to perform sedentary work[9] involving no more than simple instructions, which would allow her to avoid changes in a work setting, assembly line pace, close interaction with co-workers or the general public, or intensive supervision. (AR.at 25). Based on this residual functional capacity assessment the ALJ determined, at step four of the sequential evaluation process, that Plaintiff would be unable to perform past relevant work as a cashier, nurses' aid or housekeeper. (AR. at 29). Finally, at step five of the process, the ALJ found that there are jobs existing in the national economy that Plaintiff can perform, given her residual

---

[9] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.AR. § 404.1567(a) .

functional capacity, age, education and work experience.  (AR. at 30).

Plaintiff's motion challenges that ALJ's determination at step five of the sequential evaluation process.  (Pl.'s Brief).  Specifically, Plaintiff argues that the ALJ erred in his residual functional capacity determination as it pertains to both her exertional and non-exertional limitations. (Pl.'s Brief at 9- 20).  Finally, Plaintiff argues that, because the ALJ failed to properly consider the record medical evidence, he likewise did not adequately considered Plaintiff's subjective complaints and improperly found her to be not credible. (Pl.'s Brief at 23).

### A.    Whether the ALJ Erred in Determining that Plaintiff Has the Residual Functional Capacity to Perform Work at the Sedentary Level

Plaintiff argues that the ALJ erred in his residual functional capacity determination because (1) he failed to comply with the requirements of Social Security Ruling 86-9p, S.S.R. 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996), and (2) because the ALJ's assessment of the medical evidence pertaining to Plaintiff's physical impairments is not supported by substantial evidence. Plaintiff contends that the ALJ failed to comply with the requirements of S.S.R. 96-8p in determining her residual functional capacity. (Pl.'s Brief at 9).  Specifically, Plaintiff argues that the ALJ failed to perform a function-by-function assessment of her exertional capabilities prior to determining that she has the residual functional capacity to perform work at the sedentary level.  *Id*. at 9-10. Moreover, Plaintiff argues, while the ALJ's determination references the record medical evidence, he failed to properly consider the  record medical evidence pertaining to her physical impairments and instead distorted and misrepresented the records and opinions of Plaintiff's treating physicians. (Pl.'s Brief at 11-15).  The Commissioner contends that substantial evidence supports the ALJ's determination that Plaintiff does not have a disabling physical impairment and that Plaintiff has the

13

residual functional capacity to perform sedentary work with some nonexertional limitations, as determined by the ALJ. (Commissioner's Brief at 14-17).

Residual functional capacity is defined as "that which an individual is "still able to do despite the limitations caused by [her] impairments." *Fargnoli*, 247 F.3d at 40 (quoting *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 121 (3d Cir. 2000))(quotations omitted); 20 C.F.R. §404.1525(a)(1). In assessing a claimant's residual functional capacity, the Commissioner is required to consider all of her impairments, both severe and non-severe. 20 C.F.R. §404.1545(a)(2). Additionally, the ALJ is required to consider all evidence of record in making a residual functional capacity determination, including both medical and non-medical evidence. *Burnett*, 220 F.3d at 121 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Doak v. Heckler*, 790 F.2d 26, 29 (3d CiAR. 1986)). *See also Fargnoli*, 247 F.3d 34, 41 (3d Cir. 2001) (holding that the Commissioner is required to consider all record evidence, including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others").

Social Security Ruling 96-8p ("S.S.R. 96-8p") provides that its purpose is to state the Social Security Administration's "policies and policy interpretations regarding the assessment of residual functional capacity [] in initial claims for disability benefits under title II and XVI of the Social Security Act." S.S.R.96-8p, 1996 WL 374184 at *1. The Ruling directs the ALJ to identify the claimant's "functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), ( c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." *Id.* "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sendetary, light, medium, heavy and very heavy. *Id.*

14

In regard to an individual's residual functional capacity pertaining to his or her exertional limitations, S.S.R. 98-6p states:

> The [residual functional capacity] assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. ... At step [five] of the sequential evaluation process, [residual functional capacity] must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do. However, in order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range or work contemplated by the exertional level.

*Id.* at *3. Moreover, when assessing a claimant's exertional capacity, the ALJ is required to address the claimant's abilities to perform the physical demands of the exertional levels. *Id.* at *5.

S.S.R. 96-8p is consistent with the United States Court of Appeals' requirements for determining a claimant's residual functional capacity. *See Pearson v. Barnhart*, 380 F.Supp. 2d 496, 505 (D.N.J. 2005). *See also Snedeker v. Commissioner of Social Security*, 244 Fed. Appx. 470 (3d Cir. 2007) (addressing whether an ALJ's residual functional capacity complied with the requirements of S.S.R. 96-8p). Indeed, the Court of Appeals has held that "the ALJ's residual functional capacity assessment must 'be accompanied by a clear and satisfactory explanation of the basis on which it rests.'" *Id.* (quoting *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001)).

Having reviewed the ALJ's determination, the Court is satisfied that the requirements of S.S.R. 96-8p have been met. In assessing Plaintiff's exertional limitations, the ALJ reviewed the record medical evidence as well as Plaintiff's reports of activities of daily living. (AR. at 23, 25-27). Specifically, the ALJ noted that Plaintiff stated in reports from 2004 and 2006 that she is able to care for her personal needs on a daily basis. (AR. at 23). She also indicated that she is able to perform

15

household work, including house cleaning and washing dishes. *Id*. She also testified that she is able

to cook, drive, attend church and take public transportation. *Id*.

In addition to evaluating the non-medical evidence of record, the ALJ thoroughly reviewed

the record medical evidence in determining Plaintiff's residual functional capacity. Specifically, the

ALJ examined medical records dated as early as August 2000. (AR. at 28). The ALJ noted that

treatment records from August 2000 indicate that Plaintiff had complaints of neck and back pain and

an MRI of the cervical spine showed a herniated disc. *Id*. He further noted that treatment records

from March 2002 to February 2002 showed no signs or findings of abnormality such as loss of

movement, or sensory, motor or reflex loss or consistent complaints of neck, back or upper extremity

pain. *Id*.

The ALJ also reviewed treatment records from Dr. Kohut dated November 2004 through

August 2006. *Id*. He noted that Plaintiff had reported that her pain had improved with Flexiril. *Id*.

The records also indicate that Plaintiff underwent a cervical discectomy and fusion on September

22, 2005. *Id*. The AL noted that records from Dr. Fraider indicated a cervical disc and cervical

stenosis and continued pain post-cervical discectomy and fusion, requiring several epidural steroid

injections in 2006. *Id*. The ALJ reviewed this information and further noted that subsequent

treatment for back and neck pain was "sporadic" and records from August 2006 indicate that

Plaintiff was being treated with only Advil. *Id*.

The ALJ likewise considered medical records from Dr. McLain dated May 21, 2007,

indicating that Plaintiff had a well executed cervical fusion. *Id*. He further noted that, while Plaintiff

complained of pain of a "10" in severity, the records indicate that there was no sensory, motor or

reflex loss, loss of movement, muscle atrophy, radiculopathy, signs of cord compression or other

16

objective findings of such extreme pain. (AR. at 28-29).  Furthermore, the ALJ noted that Dr. McLain diagnosed possible pseudoarthritis and recommended smoking cessation. (AR. at 25).  As a result, the ALJ determined that Plaintiff's subjective complaints of pain were not supported by the objective medical evidence. (AR. at 29).

In consideration of the Plaintiff's reports of daily activities, the objective medical evidence and her subjective complaints of pain, the ALJ determined that Plaintiff was not so limited in her ability to stand, walk or sit for a prolonged period of time as she testified. (AR. at 26, 28). Specifically, the ALJ determined that Plaitniff's testimony regarding her functional limitations as a result of musculoskeletel pain are not entirely credible and the objective medical evidence so not show a period of 12 months during which Plaintiff could not meet the demands of sedentary work. (AR. at 28).

Given the ALJ's assessment of the record evidence and the effect on Plaintiff's functional limitations, the Court finds said assessment complies with the requirements of an adequate residual functional capacity assessment, as dictated in S.S.R. 86-9p and as required by the Court of Appeals. Therefore, Plaintiff's Motion for Summary will be denied, to the extent that it seeks remand or reversal on the issue of the adequacy of Plaintiff's residual functional capacity assessment under S.S.R. 98-6p.

Plaintiff also argues that the ALJ failed to properly consider the medical evidence and opinions of Dr. McLain and Dr. Kohut pertaining to Plaintiff's physical impairments.  (Pl.'s Brief at 10-14).  Specifically, Plaintiff argues that the ALJ's opinion misrepresents the medical records from Dr. Kohut by considering only those parts of the records of Dr. Kohut that show improvement in Plaintiff's pain and failing to note the remainder of the treatment records that indicate that

17

Plaintiff's back and neck problems cause debilitating pain. (Pl.'s Brief at 13).  Furthermore, Plaintiff argues that the ALJ ignored statements and objective findings  from Dr. McLain  regarding Plaintiff's ongoing problems with pain. (Pl.'s Brief at 14-15).

In making a disability determination, the ALJ is required to review, properly consider and weigh all of the medical records provided concerning the claimant's claims of disability.  *Fargnoli*, 247 F.3d at 42 (citing *Dobrowlsky v. Califano*, 606 F.2d 403, 406-7 (3d Cir. 1979)).  In considering the medical evidence, "the ALJ may not make speculative inferences from medical reports." *Plummer*, 186 F.3d at 429 (citing *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981)).  Moreover, when medical evidence is conflicting, the ALJ must consider all of the evidence and give some reason for dismissing the evidence he chooses to reject.  *Id*. (citing *Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983)).  While the ALJ must often make a choice in what evidence to credit when reviewing medical evidence, he is not considered to conduct a medical or scientific analysis.  *See Cotter v. Harris*, 642 F.2d 700, 705-707 (3d Cir. 1982). Indeed, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate conclusions are based, so that the reviewing court may know the basis for the decision."  *Id*.

After reviewing the ALJ's decision and the record medical evidence, the Court is satisfied that the ALJ properly reviewed the medical evidence of record.  While Plaintiff argues that the ALJ failed to properly consider all of the treatment records from Dr. Kohut, Dr. Fraider and Dr. McLain, it is clear from the ALJ's determination that he reviewed the relevant evidence pertaining to Plaintiff's physical impairments and adequately addressed his reasons for finding certain evidence

18

of particular significance in his determination of Plaintiff's functional limitations. Certainly, while the ALJ's determination does not reference *every* detail of the medical records from Dr. Kohut and Dr. McLain, he does properly summarize the information relevant to his disability determination. *See Fargnoli*, 247 F.3d at 42 (holding that there is no requirement that the ALJ discuss or refer to every piece of relevant evidence in the record, so long as the reviewing court can discern the basis of decision). The ALJ noted that Plaintiff had a cervical disectomy and fusion in September 2005, that appeared to be well executed. (AR. at 28). He also observed that Plaintiff continued to have complaints of neck and back pain subsequent to the surgery and was treated with pain medication and epidural injections numerous times in 2006. *Id.* He noted, however, that on examination Plaintiff exhibited few debilitating symptoms and objective findings showed few abnormalities. (AR. at 28-29). Moreover, the ALJ properly considered the record medical evidence in light of the non-medical evidence, including Plaintiff's reports of daily activity and his own observations at the administrative hearing. *See Fargnoli*, 247 F.3d at 41.

The Court finds that the ALJ's factual findings are supported by substantial evidence. In regard to Plaintiff's concerns about his evaluation of the medical records of Dr. Kohut, Dr. Fraider and Dr. McLain, we find that substantial evidence supports the determination that said records indicate that Plaintiff has the residual functional capacity to perform sedentary work. Indeed, as the ALJ's opinion indicates, records from Dr. Kohut show that Plaintiff was diagnosed with cervical spondylosis and likely paraspinal spasm in 2004. (AR. at 208-215). There was disc dessication with diffuse bulging at C3 through C7. (AR. at 221). Dr. Fraider noted in August 2005 that a pain control breakthrough was made with Lortab. (AR. at 235). In September 2005, Plaintiff underwent a cervical fusion at the C7 level. (AR. at 226). Subsequent to the procedure, Plaintiff indicated relief

19

of arm pain and was weaned from fentanyl. (AR. at 226). Plaintiff continued to experience back and neck pain subsequent to the fusion and was treated with various pain medications and was administered cervical epidural anesthetic and steroid injections on several occasions in 2006. (AR. at 269-271).

Records from Dr. McLain dated 2007 indicate that Plaintiff received "transient" relief from chronic neck and back pain from pain medications and epidural injections. (AR. at 280). He noted that Plaintiff continued to complain of pain, which increased with exercise and activity. *Id.* He noted that Plaintiff seemed sensitive to pain on touch on her back and neck. *Id.* He also noted tenderness over her paraspinous and paracervical muscles. *Id.* On examination, Dr. McLain indicated that Plaintiff had normal grip and motor function with some breakaway weakness. *Id.* He also indicated that there was no evidence of sensory, motor or reflex loss, loss of movement, muscle atrophy, radiculopathy or signs of cord compression. *Id.* He recommended continued treatment with pain medications and limited activity as the best course of pain management. *Id.* He also noted the possibility of an attempted revision surgery, but believed the risk of pseudoarthitis would be too high to warrant the procedure. (AR. at 282).

The Court is not permitted reverse the determination of the ALJ "if it is supported by substantial evidence, even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Here, the Court finds that the ALJ's determination is supported by substantial evidence and therefore will affirm that determination. While the record indicates that Plaintiff has been treated for neck and back pain since the surgery in September 2005, the evidence does not support reversal of the ALJ's determination pertaining to

Plaintiff physical limitations.  The Court will therefore affirm the ALJ's determination that Plaintiff is capable of performing work at the sedentary exertional level and Plaintiff's motion for summary judgment as to this determination will be denied.

**B.      Whether Substantial Evidence Supports the ALJ's Residual Functional Capacity Determination Given Plaintiff's Non-exertional Impairments**

Plaintiff further challenges the ALJ's residual functional capacity assessment, arguing that the ALJ failed to properly consider the medical evidence pertaining to Plaintiff's non-exertional limitations. (Pl.'s Brief at 15).  In this regard, Plaintiff contends that the ALJ improperly disregarded the opinions of Plaintiff's treating physicians at Stairways Behavioral Health and the consultative examiner, Dr. Uran. (Pl.'s Brief at 22). Indeed, Plaintiff argues, evidence from Plaintiff's treating and examining mental health professionals indicates that she does not meet the basic mental demands of unskilled work on a regular, continuing and sustained basis. (Doc. No.9 at 22-23). As such, Plaintiff argues, the ALJ's determination that Plaintiff is able to perform sedentary work, with the additional limitations that the work involve no more than simple instructions, would permit her to avoid changes in a work setting, assembly line pace, close interaction with co-workers or the general public or intensive supervision, is not supported by substantial evidence. *Id*.

As noted above, in making a residual functional capacity determination, the ALJ is required to consider and weigh all of the medical records provided concerning a claimant's impairments. *Fargnoli*, 247 F.3d at 42 (citations omitted). When evaluation medical evidence provided by a treating physician, in particular, "[a] cardinal principle … is that that ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the [claimant's] condition over a prolonged period of time.'" *Morales v. Apfel*, 225

F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer*, 186 F.3d at 429) (citations omitted). However, "[w]hile it is true that "[u]nder applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight," *Fargnoli*, 247at 43 (citing 20 C.F.R. § 404.1527(d)(2)), an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429 (3d Cir.1999) (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir.1985)).

An ALJ may reject the assessments of a treating or examining physician, but may do so outright " 'only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Id*. (quoting *Plummer*, 186 F.3d at 429) (citations omitted); 42 U.S.C. §423(d)(1)(A). The ALJ may not substitute his own opinions for that of a treating or examining physician or "make speculative inferences from medical reports." *Id*. (citing *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981)).

The ALJ is also required to consider the findings of a state agency psychological consultant as medical opinion evidence, with the exception of the ultimate disability determination. 20 C.F.R. §404.1527(f)(2)(i). *See also* S.S.R. 96-6p. Indeed, psychological consultants of a state agency who evaluate a claimant's functional limitations upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." *Id*. Thus, an ALJ is not permitted to ignore these opinions, but must explain the weight given to these opinions in their decision. S.S.R. 96-6p, 1996 WL 374180 at *1 (S.S.A. July 2, 1996).

Here, in assessing Plaintiff's non-exertional impairment, *i.e.*, her affective disorder, the ALJ

specifically considered medical records from Dr. Uran, the consultative examiner, Drs. Kohn, Behan and Bailey, Plaintiff's treating psychiatrists at Stairways. (AR. at 28). The ALJ also considered the opinions of the state agency psychological consultant. *Id*.

Plaintiff saw Dr. Uran for a consultative examination in July 2004. The ALJ considered the records from Dr. Uran and found it to be of "limited utility." (AR. at 27). Specifically, the ALJ concluded that Dr. Uran's reports as to Plaintiff's functional limitations appeared to be based on Plaintiff's subjective complaints and self-reported history as opposed to objective findings. *Id*. The ALJ noted that, on mental status examination, Dr. Uran found that Plaintiff was alert and fully oriented, well dressed and groomed and exhibited no unusual behavior. *Id*. He also noted that Dr. Uran's notes indicate that Plaintiff had coherent and spontaneous speech. Her concentration, memory and ask persistence were adequate for simple, routine, repetitive tasks. *Id*. The ALJ determined that Dr. Uran's report, though it indicated marked or extreme limitations in basic work-related functions, was internally inconsistent, as she also assigned Plaintiff a GAF score of 55. *Id*. Moreover, the ALJ found Dr. Uran's report inconsistent with Dr. Kohn's August 2005 report regarding Plaintiff's functional limitations, which indicated that Plaintiff had no more than "moderate" limitations in her ability to understand, remember and carry out detailed instructions, to make judgments on simple work related decisions, to interact appropriately with the public, supervisors and coworkers and to respond appropriately to usual work pressures. (AR. at 28).The ALJ also noted that the state agency psychologist, after reviewing the record, concluded that Plaintiff could meet the mental demands of a wide range of work. (AR. at 28).

The Court finds that the ALJ appropriately evaluated the records from Dr.Uran's 2004

consultative examination.  The ALJ was permitted to accord less weight to Dr. Uran's opinion on the basis of contradictory medical evidence.  *See Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)).  The ALJ was entitled to afford greater weight to Plaintiff's treating physicians at Stairways, than the consultative examiner because the opinions of those treating physicians were based on continuing observations of Plaintiff over the course of several years. *See Morales*, 225 F.3d at 317; 20 C.F.R. § 416.1527(d).  Moreover, the ALJ's opinion articulates an adequate basis for rejecting Dr. Uran's opinions.  Therefore, his factual determinations should not be disturbed by the Court upon review. *See Van Horn v. Schweiker*, 717 F.2d 871, 973 (3d Cir.1983).

Furthermore, the Court finds that the ALJ's determination that Plaintiff could meet the basic mental demands of sedentary work, with the additional limitations that it include no more than simple instructions, would allow her to avoid changes in a work setting, assembly line pace, close interaction with co-workers or the general public or interaction with intensive supervision.  While Plaintiff argues that the ALJ ignored relevant medical evidence of Plaintiff's treatment with Stairways between 2004 and 2007, the ALJ did, in fact, note treatment records from Stairways in 2006 and 2007, which did not indicate objective signs and findings of mental impairments which would be completely disabling. (AR. at 28).  Furthermore, in reviewing the record, the Court finds that the ALJ's determination is substantiated by the records from Plaintiff's treating physicians.  In 2004, Plaintiff was a walk-in at Stairways and called several times in the month of September with complaints of a racing thoughts, feelings of manic mood and mood swings. (AR. at 198).  However, the records indicate that Plaintiff was seen in August 2004, but the nurse did not believe she was manic or hypo manic. *Id*.  Moreover, while Plaintiff called several times in September with these

complaints, her medication was not changed and she was directed to maintain her regular appointments. *Id*.

Dr. Kohn's medical source statement completed in August 2006 indicated that Plaintiff would have only moderate limitations in her ability to make judgments on simple work-related decisions, in her ability to interact appropriately with the public, supervisors and co-workers and to respond appropriately to work pressures in a usual work setting. (AR. at 203). A medical source statement from Dr. Bailey completed in March 2007 indicates that Plaintiff would have marked limitations in her abilities to interact with supervisors and co-workers and to respond appropriately to work pressures. (AR. at 258). The ALJ considered both Dr. Kohn's statement and Dr. Bailey's statement and included additional limitations to Plaintiff residual functional capacity to compensate for Plaintiff's limitations in her ability to interact with others and to respond appropriately to work pressures. (AR. at 28).

Given the above, the Court finds that the ALJ gave proper weight to the opinions of Plaintiff's treating physicians and his findings pertaining to said opinions are supported by substantial evidence. Therefore, the Court will affirm the ALJ's residual functional capacity determination.

**C.    Whether the ALJ Erred in Findings Plaintiff's Subjective Complaints Not Entirely Credible**

Finally, Plaintiff argues that the ALJ erred in his credibility determination of Plaintiff's subjective complaints. (Pl.'s Brief at 23-25). The Commissioner counters that Plaintiff's subjective reports of daily activity and the record medical evidence support the ALJ's finding that Plaintiff's subjective complaints were not entirely credible. (Commissioner's Brief at 22-25).

"The authority to evaluate the credibility of [the claimant] concerning pain and other subjective complaints is reserved for the ALJ." *Gilmore v. Barnhart*, 356 F.Supp. 2d 509, 513 (3d Cir. 2005) (citations omitted). While the ALJ must give a claimant's subjective complaints "serious consideration," *Powell v. Barnhart*, 437 F.Supp. 2d 340, 342 (E.D. Pa. 2006) (citing *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002)), "the ALJ may reject a claimant's complaints if he does not find them credible." *Id.* (citing *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d CiR. 1999)); *Hirschfield v. Apfel*, 159 F.Supp. 2d 802, 811 (E.D. Pa. 2001)(citing *Capoferri v. Harris*, 501 F.Supp. 32, 37 (E.D. Pa. 1980), *aff'd* 649 F.2d 858 (3d CiR. 1981); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d CiR. 1974), *cert. denied*, 420 U.S. 931 (1975)) (holding that the ALJ may reject a claimant's subjective complaints of "disabling pain if he affirmatively addresses the claim in his decision, specifies the reason for rejecting it, and has support for his conclusion in the record"). Moreover, "if supported by substantial evidence, the ALJ's credibility findings may not be disturbed upon appeal." *Hirschfield*, 159 F.Supp. 2d at 811 (citing *Van Horn v. Schweiker*, 717 F.2d 871, 871 (3d CiR.1983); *Smith v. Califano*, 637 F.2d 968, 972 (3d CiR.1981); *Baerga*, 500 F.2d at 312).

_____The ALJ found that Plaintiff' subjective complaints regarding the intensity, persistence and limiting effects of depression symptoms as well as her testimony regarding the severity of her musculoskeletal pain to be not entirely credible. (AR. at 27-28). In regard to Plaintiff's depression symptoms, the ALJ noted that treatment records from Dr. Kohn indicated only mild symptoms and functional limitations. (AR. at 27). Additionally, the ALJ noted that, on examination by Dr. Uran, Plaintiff's symptoms and abilities were not consistent with marked limitations in basic work related functions. *Id.* In regard to Plaintiff's back and neck pain, the ALJ noted that Plaintiff's complaints

of debilitating pain were not consistent with treatment records from her examining physicians. (AR. at 28-29).In particular, records from Dr. McLain in 2007 note continued complaints of severe pain, but his examination indicated no sensory, motor or reflect loss, loss of movement, muscle atrophy, radiculopathy, signs of cord compression or other findings that would support a claim of such extreme pain. (AR. at 28-29).

Finally, the ALJ considered Plaintiff's testimony regarding her activities of daily living, in his assessment of credibility. (AR. at 29).  He noted that Plaintiff testified that she is able to cook, drive, attend church and was recently married. *Id*. Additionally, the ALJ noted Plaintiff's demeanor at the administrative hearings, and found her ability to respond to questions, recall events, dates and names and her overall appearance to belie her complaints of the severity of her pain and depression symptoms. *Id*.

For the reasons discussed above, the Court finds that the ALJ's credibility determination is supported by substantial evidence.  Therefore, the Court will affirm.

### V.  Conclusion

Because the Court concludes that the ALJ's findings are supported by substantial evidence and for all the reasons discussed more fully above, the Court will affirm the ALJ's disability determination. As such, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

An appropriate Order follows.

s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record.

_____

_____

_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TERRI COCCARELLI- YACOBOZZI,**    ) | |
|        **Plaintiff,**     ) | |
|        ) | |
| **v.**     ) | **Civil Action No. 08-311** |
|        ) | |
| **MICHAEL J. ASTRUE,**     ) | |
| **COMMISSIONER OF SOCIAL**     ) | |
| **SECURITY,**     ) | |
|        **Defendant.**     ) | |

**ORDER**

AND NOW, this 9th day of February, 2010, and for the reasons stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No.8] is hereby DENIED and the Commissioner's Motion for Summary Judgment [Doc. No. 10] is hereby GRANTED.  JUDGMENT is hereby entered in favor of Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Terri A. Coccarelli-Yacobozzi.

The clerk is hereby directed to mark the case closed.

s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record.